# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
_____
HUTCHINSON                           :
INDUSTRIES INC.,   and               :
HUTCHINSON S.A.,                     :
         Plaintiffs,                 :
                                     :
v.                                   :        Civil Action No. 09-1489 (FLW)
                                     :
ACCURIDE CORPORATION,                :
         Defendant.                  :              OPINION
_____     :
```

**WOLFSON, United States District Judge**:

Plaintiffs Hutchinson Industries, Inc. and Hutchinson S.A. (collectively, "Plaintiffs") are holders of U.S. Patent No. 6,474,383 (the "'383 patent"), which describes an automotive wheel with an internal valve system. In the instant suit, Plaintiffs allege that Defendant Accuride Corp. ("Defendant") infringed on their '383 patent. Specifically, Plaintiffs allege that Defendant has made or had others make the allegedly infringing wheel, and that Defendant has offered for sale or sold the wheel within the United States. Defendant moves to dismiss, or in the alternative for summary judgment on, all counts of Plaintiffs' complaint. Defendant submits that its wheel was manufactured solely for the United States Government ("Government") with its authorization and consent, placing the alleged infringing conduct within the scope of 28 U.S.C. § 1498, and that Defendant is thereby immune from suit in this patent infringement action. After reviewing the submissions in connection with this action, and having heard counsel's arguments, the Court finds that § 1498 applies and thus, Defendant's motion for summary judgment is GRANTED.

I.        **Background**

The facts are undisputed unless otherwise noted.  Defendant has manufactured an automotive wheel with an internal valve system designed to operate in conjunction with a "central tire inflation system" ("CTIS").  Eaton Decl.[1] at ¶ 3.  A CTIS equipped vehicle allows the driver of the vehicle to adjust the tire pressure in all tires while driving, in order to select a tire pressure best suited for the terrain.  Young Decl.[2] at ¶ 2.  A vehicle's CTIS can connect to CTIS-compatible wheels and tires through the wheel to the tire either externally or internally.  Id. at ¶¶ 5-6.  Defendant has supplied its wheels to three private companies: BAE Systems Ground Systems, Navistar Defense, and Oshkosh Corp. (collectively, the "Companies").[3]  Eaton Decl. at ¶ 11.  The Companies have used these wheels in conjunction with a CTIS in the manufacture of mine-resistant ambush-protected all-terrain vehicles ("M-ATVs"), which were built to bid on a Government contract (the "Solicitation").[4]  Id. at ¶¶ 7, 11-13.  The Solicitation requires any bidding party to provide prototype M-ATVs in order to remain eligible to be awarded the contract.  Solicitation at 3.  The Solicitation also lists specifications the Government requires or prefers to be included as part of the M-ATVs.  One of these specifications is a CTIS.  Eaton Decl. at ¶ 7; Solicitation Specs.[5] at 77 ("The vehicle shall be equipped with

---

[1] "Eaton Decl." refers to Declaration of James K. Eaton, dated June 16, 2009, and attached to Defendant's Motion To Dismiss.

[2] "Young Decl." refers to Declaration of Mark Young, dated July 10, 2009, and attached to Plaintiffs' Br. In Opp.

[3] The parties informed the Court at oral argument that Defendant also shows its wheel at military trade shows.

[4] Army Solicitation No. W56HZV-09-0115, requesting bids to supply M-ATVs, attached to Defendant's Motion To Dismiss at Ex. 1.

[5] "Solicitation Specs." refers to Performance Specifications of the Solicitation, attached to Defendant's Motion To Dismiss at Ex. 2.

a Central Tire Inflation System (CTIS) which will allow the driver to adjust all vehicle tires to any one of four preset tire pressures, from a single control, corresponding to Emergency, Mud/Snow/Sand, Cross-Country, and Highway operation.").

Two of the Companies used Defendant's wheel in their M-ATVs delivered as prototype vehicles, and the Government ordered three more vehicles from BAE Systems Ground Systems with Defendant's wheels.[6]  Defendant's Motion To Dismiss at Ex. 6.

Plaintiffs hold a patent for an automotive wheel designed to operate in conjunction with a CTIS.  Young Decl. at ¶ 2.  Specifically, Plaintiffs' '383 patent describes a wheel equipped with an internal valve system that connects a CTIS through the wheel rim to the tire.  Pleune Decl.[7] at Ex. 1.  In addition to holding the patent, Plaintiffs manufacture and sell the wheel.  Id. at ¶ 3.

Plaintiffs became aware of Defendant's wheel at some point during the Companies' delivery of prototype M-ATVs to the Government.  Plaintiffs informed Defendant that its wheel with an internal valve system was similar or identical to that encompassed by the '383 patent, and thus infringed on the patent.  Eaton Decl. at ¶ 19; Defendant's Motion To Dismiss at Ex. 11.  Defendant disputed this assertion.  Eaton Decl. at ¶ 20.  Shortly thereafter, Plaintiffs filed a complaint in this Court alleging that

---

[6] Defendant also informed the Court in a letter dated February 23, 2010 ("Defendant's Letter") that it had responded to a "request for quote" ("RFQ") for its wheel from Diamond Force Engineering, LLC, a subsidiary of Navistar.  Defendant's Letter at 3.  Defendant later withdrew its response to the RFQ, and no wheels were offered to Diamond Force.  Id.  This issue is discussed in greater detail at note 12, infra.

[7] "Pleune Decl." refers to Declaration of S. Benjamin Pleune, dated July 14, 2009, and attached to Plaintiffs' Br. In Opp.

Defendant infringed on the '383 patent.  At all times relevant to Plaintiffs' complaint, Defendant's allegedly infringing activities occurred solely in the bidding context.[8]

Defendant moves to dismiss, or alternatively for summary judgment on, Plaintiffs' complaint on the basis that Defendant's wheel falls within the scope and protection of 28 U.S.C. § 1498.  Specifically, Defendant argues that because the alleged infringing wheel was made in response to bids on a Government contract, § 1498 applies to shield Defendant from liability for patent infringement.  Defendant further argues that under § 1498, Plaintiffs' sole recourse for any alleged infringement is a claim against the United States Government in the United States Court of Federal Claims.  For the purposes of this motion, Defendant neither responds to nor concedes the merits of Plaintiffs' allegations of infringement.  Defendant's Reply In Supp. at 3 n.1.  On March 4, 2010, the Court held oral argument on the motion.

The Court, having considered matters outside the pleadings, converts Defendant's motion from a motion to dismiss under <u>Fed. R. Civ. P.</u> 12(b)(6) into a motion for summary judgment under <u>Fed. R. Civ. P.</u> 56.  See <u>Fed. R. Civ. P.</u> 12(d);[9] <u>Toxgon Corp. v. BNFL, Inc.</u>, 312 F.3d 1379, 1382-83 (Fed. Cir. 2002) (holding that where a private party asserted § 1498 as an affirmative defense, the district court was "justified in treating the [Rule 12(b)(6)] dismissal as a [Rule 56] summary judgment since the Federal Rules of

---

[8] At oral argument the parties informed the Court that the Government eventually awarded the M-ATV contract under the Solicitation to Oshkosh Corp., but these Oshkosh M-ATVs were equipped with wheels supplied by Plaintiffs, not Defendant, and thus that contract is of no relevance to this infringement suit.

[9] "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  <u>Fed. R. Civ. P.</u> 12(d).

Civil Procedure permitted that approach and the parties did not dispute any issue of material fact").

## II.    Standard of Review

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law."  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Anderson, 477 U.S. at 248.

The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment.  Celotex, 477 U.S. at 330.  "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."  Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001). There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322-23.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323; Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 n.5 (3d Cir. 1992).

## III. Discussion

This dispute turns solely on the nature and applicability of 28 U.S.C. § 1498(a), which states:

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture. . . .

> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

28 U.S.C.A. § 1498(a).[10]  In order for § 1498(a) to shield a contractor or subcontractor from liability for patent infringement, the alleged infringing party must show that its conduct is both (1) "for the United States [Government];" and (2) "with the authorization

---

[10] At oral argument, both parties conceded that § 1498 is not a jurisdictional bar, but rather an affirmative defense.  Moreover, the Federal Circuit has resolved any uncertainty in this regard: in "litigation between private parties . . . section 1498(a) acts as a codification of a defense and not as a jurisdictional statute."  Toxgon Corp., 312 F.3d at 1381 (quotations omitted); see also Madey v. Duke University, 307 F.3d 1351, 1360 (Fed. Cir. 2002) ("Because § 1498(a) is not jurisdictional, . . . the basis for the district court's partial dismissal was improper.").  Thus, because § 1498 operates as an affirmative defense, a district court must resolve the matter through summary judgment. Toxgon Corp., 312 F.3d at 1381 ("If appropriate, a defense arising under section 1498(a) should be resolved by summary judgment under Rule 56 rather than a motion to dismiss under Rule 12."); see also Crater Corp. v. Lucent Technologies, Inc., 255 F.3d 1361, 1369 (Fed. Cir. 2001) ("summary judgment was properly granted in favor of Lucent on its affirmative defense under 28 U.S.C. § 1498(a)"); Manville Sales Corp. v. Paramount Systems, Inc., 917 F.2d 544, 555 (Fed. Cir. 1990) ("the district court properly considered section 1498(a) as providing an affirmative defense"); Stelma, Inc. v. Bridge Elecs. Co., 300 F.2d 761, 762 (3d Cir. 1962) (affirming a district court's application of § 1498 through summary judgment); Parker Beach Restoration, Inc. v. United States, 58 Fed. Cl. 126, 128 (Fed. Cl. 2003) (approving of a district court's use of summary judgment under § 1498 in a dispute between two private parties).

or consent of the Government."  28 U.S.C. § 1498(a).  Thus, the sole issue before the Court is whether Defendant's manufacture and supply of an allegedly infringing wheel for the purpose of bidding on a Government contract falls within the scope of § 1498.

To resolve this issue, the Court finds it helpful to review the underlying history and policy rationale of § 1498.  "The original purpose of § 1498 was 'to stimulate contractors to furnish what was needed for the [First World] War, without fear of becoming liable themselves for infringements to inventors or the owners or assignees of patents.'"  Madey v. Duke Univ., 413 F. Supp. 2d 601, 606 (M.D.N.C. 2006) (quoting Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 345 (1928)).  This statute was enacted

> to relieve the contractor entirely from liability of every kind for the infringement of patents in manufacturing anything for the government, and to limit the owner of the patent . . . to suit against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture.  The word "entire" emphasizes the exclusive and comprehensive character of the remedy provided.

Richmond Screw, 275 U.S. at 343.[11]  Put another way, § 1498 "deprives the owner of the patent of a remedy against the infringing private contractor for infringements thereof and makes the government indemnitor for its manufacturer or contractor in his infringements."  Id. at 346.  Thus, it is clear that the purpose of § 1498 is to remove the potential threat of a patent infringement suit from Government contractors, transferring it to the Government instead.  TVI Energy Corp. v. Blane, 806 F.2d 1057, 1059-60 (Fed. Cir. 1986).  This transfer of liability helps ensure that the Government's freedom in

---

[11] Richmond Screw interpreted "the Act of 1918, c.114, 40 Stat. 704, 705, the pertinent portion of which has remained essentially unchanged through its present codification at 28 U.S.C. § 1498(a)."  Manville Sales Corp., 917 F.2d at 554 n.4.

7

selecting contractors is not limited by a contractor's fear of becoming entangled in litigation.  See Id. at 1060; see also Dearborn Chemical Co. v. Arvey Corp., 114 F. Supp. 369, 371 (D. Ill. 1953) ("The statute was designed to furnish the patentees an adequate and effective remedy while saving the government from having its public works tied up and thwarted while private parties are carrying on a long drawn out litigation.") (citing Broome v. Hardie-Tynes Mfg. Co., 92 F.2d 886, 888 (5th Cir. 1937)).  In this manner, § 1498 "allows the Government to obtain what it needs from third parties, whether goods, services, or research, regardless of potential patent infringement, with compensation provided later to patent holders in a suit against the Government in the Court of Federal Claims for any patents infringed in the process."  Madey, 413 F. Supp. 2d at 606.  Lastly, "the coverage of § 1498 should be broad because Congress intended 'to allow the Government to procure whatever it wished regardless of possible patent infringement.'"  Connell v. KLN Steel Products Ltd., No. 04 C 194, 2009 WL 691292, at *11 (N.D. Ill. March 16, 2009) (quoting TVI Energy, 806 F.2d at 1060); see also Astaris, LLC v. Fire-Trol Holdings, LLC, No. 03-1468, 2006 U.S. Dist. LEXIS 384, at *21 (D. Ariz. Jan. 5, 2006) ("the purpose underlying §1498 [is] to allow the government to procure materials needed to operate without the fear of patent infringement claims"); Coakwell v. United States, 372 F.2d 508, 511 (Ct. Cl. 1967) ("section [1498] was enacted for the purpose of enabling the Government to purchase goods for the performance of its functions without the threat of having the supplier enjoined from selling patented goods to the Government").

Indeed, the fundamental purpose of § 1498 is to ensure that the Government has the widest range of contracting options for its procurement and services contracts.  See

Robishaw Eng'g v. United States, 891 F. Supp. 1134, 1141 n.12 (E.D. Va. 1995) ("the primary purpose of § 1498 immunity is to prevent interference with the government's procurement of needed materials"); cf. Opinion of the Comptroller General of the United States, 119 U.S.P.Q. 187, 188 (1958) ("section 1498 appears clearly to constitute a modification of the patent law by limiting the rights of patentees insofar as procurement of supplies by the Government may be concerned . . . [w]here the procurement is to be made by formal advertising, . . . there is no alternative to the securing of the maximum amount of competition from firms qualified and willing to undertake the production of the articles") (cited in TVI Energy, 806 F.2d at 1060 n.6).

The Court now turns to whether § 1498(a) shields Defendant from liability here. To begin, the Court notes that the protections of § 1498(a) extend to both contractors and subcontractors.  28 U.S.C. § 1498(a); W.L. Gore & Assocs., Inc. v. Garlock, Inc., 842 F.2d 1275, 1283 (Fed. Cir. 1988) (holding that, when applicable, the plain language of § 1498(a) shields contractors, subcontractors, and sub-subcontractors from liability); see also TVI Energy, 806 F.2d at 1060 ("[section] 1498 extends governmental immunity to all subcontracts, as long as the prime contract evidences the Government's authorization and consent").  Thus, any case law applying § 1498 to contractors can be equally applied to subcontractors.

Neither party disputes that, here, Defendant's product is "for the Government," as the wheel was manufactured solely for the Companies in response to the Solicitation.[12]

---

[12] In response to the Court's request, Defendant provided the Court with a letter, dated February 23, 2010 ("Defendant's Letter"), detailing all the parties to whom Defendant supplied its wheels.  In addition to the three Companies listed in this opinion, Defendant informed the Court that it had responded to a separate "request-for-quote" ("RFQ") for its wheels from Diamond Force Engineering, LLC, a subsidiary of Navistar, "without

See Defendant's Reply Br. In Supp. at 3.  This falls within the generally understood definition of "for the Government."  See, e.g., Sevenson Envtl. Svcs., Inc. v. Shaw Envtl., Inc., 477 F.3d 1361, 1365 (Fed. Cir. 2007) ("[T]he 'for the Government' prong of the definition appears to impose only a requirement that the use or manufacture of a patented method or apparatus occur pursuant to a contract with the government and for the benefit of the government.").  Instead, Plaintiffs claim that Defendant did not produce the wheel with the "authorization or consent of the Government."  This Court disagrees.

For the purposes of § 1498(a), the Government's authorization and consent can be either explicit or implied.  Explicit authorization and consent occurs when the Government specifically includes in its contract a product or service that authorizes the contracting party to infringe on another's patent.  Hughes Aircraft Co. v. United States, 29 Fed. Cl. 197, 223 (Fed. Cl. 1993) ("An express authorization or consent will be found where the government requires the private contractor to use or manufacture the allegedly infringing device, even if the government does not know that the device infringes a

---

knowing specifically whether the wheels at issue were intended for use by the U.S. Government."  Defendant's Letter at 3.  However, when Defendant learned that the wheels were potentially for use by a foreign government, Defendant withdrew its quote to that party.  Id.  Plaintiffs do not argue that this response to Diamond Force's RFQ precludes Defendant from obtaining immunity under § 1498.  However, even had Plaintiffs raised this argument, the Court does not believe Defendant's limited action, which did not involve supplying a wheel, is sufficient to cause Defendant to lose the protection of § 1498.  See Ling-Temco-Vought, Inc. v. Kollsman Instrument Corp., 372 F.2d 263, 269-270 (2d Cir. 1967) ("[A]ppellant contests dismissal under Section 1498 by showing the wide range of non-governmental uses for which the instrument in question might allegedly be adapted.  But . . . appellee should not be deprived of its Section 1498 defense [for it] is conceded that no actual sales of the [patented product] were made . . . .") (citing Knapp-Monarch Co. v. Casco Products Corp., 342 U.S. 622 (7th Cir. 1965)) (other citations omitted).  Finally, Defendant has represented to the Court in its papers and at oral argument that Defendant has not, and will not, bid on or supply any of the allegedly infringing wheels to any party other than the Government, its contractor, or a potential contractor submitting a bid on a Government contract.

patent.") (citing TVI Energy, 806 F.2d at 1060).  Further, when a Government contract contains an explicit authorization and consent clause, the language of that clause, be it broad or narrow, is generally determinative of whether the Government consented to the contractor's alleged infringement in the performance of the contract.  See Madey, 413 F. Supp. 2d at 609 ("[W]here the Government limits its consent, as contemplated by use of language providing a narrower or 'limited' authorization and consent, that limited consent . . . should be narrowly construed so as not to find consent and impose potential liability on the Government where the terms of the consent clause are not fully met.").

In reviewing the cases that discuss explicit authorization and consent, it appears this issue primarily arises in circumstances where a Government contract has been awarded to a contractor, and not in the context of bidding.  See Sevenson, 477 F.3d at 1366-67; Hughes, 29 Fed. Cl. at 223; Parker Beach Restoration v. United States, 58 Fed. Cl. 126, 132 (Fed. Cl. 2003); Carrier Corp. v. United States, 534 F.2d 244, 248 (Ct. Cl. 1976).  However, there are times when the Government does explicitly authorize and consent to infringement in the bidding context by inserting the authorizing language into the invitation to bid.  See Stelma, Inc. v. Bridge Elecs. Co., 300 F.2d 761, 762 (3d Cir. 1962) (finding explicit authorization where "the invitation to bid specif[ied] that the subject matter of the contract was [the patented] 'Stelma, Inc.'s Model TDA-2S, or equal'").  The Solicitation, here, does not contain any express language that authorizes the Companies or their subcontractors to infringe on the '383 patent.  Solicitation Specs. at 77.  Therefore, the Government has not explicitly consented to the infringement of the '383 patent to bid on the Solicitation; no contract has been awarded to Defendant, and the

Solicitation only requests that the M-ATVs contain a CTIS, without reference to the '383 patent.

In addition to explicit authorization or consent, the Government can also implicitly give its authorization or consent. TVI Energy, 806 F.2d at 1060. There are two general categories of cases in which courts have addressed the Government's implied authorization or consent: cases in which the contractor has entered into a contract with the Government, and cases in which the contractor is bidding on a contract with the Government. Unfortunately, there are no cases clearly delineating whether a different analysis should result in these two contexts. In that connection, the Court will address separately the implied authorization and consent analysis for each of these categories of cases.

In circumstances where a contractor has entered into a contract with the Government, and the patent holder's infringement claim turns on a product or method used in the contractor's execution of the contract, courts limit a finding of the Government's implied authorization and consent to certain conditions. See Madey, 413 F. Supp. 2d at 609. The rationale for limiting implied authorization and consent once a contract exists is easily understood. Because the parties have agreed to the terms of the contract, including when the Government will be liable for the contractor's infringement, a court should be hesitant to impose additional liability on the Government through a finding of implied authorization and consent. See, e.g., Id. at 609-10 (where a contract exists, "[a]uthorization and consent will not be implied lightly"); see also Parker Beach, 58 Fed. Cl. at 133-34; Carrier, 534 F.2d at 247-49. Additionally, where the Government is the defendant in an infringement suit under § 1498, any implied authorization or

consent should be narrowly construed because "implied consent operates as a waiver of sovereign immunity." Madey, 413 F. Supp. 2d at 609.

Thus, where the Government and contractor have entered into a contract, the Government provides its explicit authorization and consent by the language of the contract, and its implied authorization and consent "'by contracting officer instructions, by specifications or drawings which impliedly sanction and necessitate infringement, [or] by post hoc intervention of the Government in pending infringement litigation against individual contractors.'" Parker Beach, 58 Fed. Cl. at 132-33 (quoting Hughes Aircraft Co. v. United States, 534 F.2d 889, 901 (Cl. Ct. 1976)). An example of implied consent under a contract with the Government is where "(1) the government expressly contracted for work to meet certain specifications; (2) the specifications cannot be met without infringing on a patent; and (3) the government had some knowledge of the infringement." Madey, 413 F. Supp. 2d at 609 (citing Larson v. United States, 26 Cl. Ct. 365, 370 (Cl. Ct. 1992); see also Bereslavsky v. Esso Standard Oil Co., 175 F.2d. 148, 150 (4th Cir. 1949) (finding implied authorization and consent because "although the written contract did not provide in express terms for delivery of a product which would infringe the patent, it did require maximum production, which necessarily resulted in a product containing the infringing ingredients").

For example, in Carrier, where the court did not find any implied authorization or consent by the Government and held the Government not liable for the alleged infringing act of a contractor, the Government had entered into a services contract with a contractor to remove garbage from an Air Force base, and during the performance of the contract the contractor had allegedly used equipment that infringed on the plaintiff's patent.

Carrier, 534 F.2d at 246-47.  The plaintiff brought suit against the Government in Claims Court.  Id. at 246.  The court found that the neither the services contract nor the Government contracting officer had ever requested or required use of the infringing equipment.  Id. at 247-48.  For this reason, the court rejected the plaintiff's argument that the Government had implicitly authorized or consented to the contractor's use of infringing equipment in the performance of a contract.  Id. at 248.

The court in Parker Beach similarly declined to find implied authorization or consent by the Government, and held the Government not liable for the allegedly infringing act of a contractor.[13]  Parker Beach, 58 Fed. Cl. 126.  The court based its holding on the terms of the contract between the Government and the contractor, which did not include an authorization and consent clause.  Id. at 127.  Rather, the contract contained a non-indemnity clause "making no guarantee that the project would not infringe an existing patent."  Id.  The court noted that even if the non-indemnity clause alone was not determinative, the Government had not provided its implied authorization and consent to the alleged infringement.  Id. at 132-34.  The alleged infringement was not required by the contract, nor was there any evidence of the Government sanctioning the

---

[13] Significantly, however, the Parker Beach court noted that in the previous suit between the plaintiff and the private contractor accused of infringement in performance of the contract, the district court in that case granted summary judgment in favor of the defendant contractor under § 1498.  Parker Beach, 58 Fed. Cl. at 128.  Moreover, that court did find that Government had implicitly authorized and consented to the contractor's alleged infringement for the purposes of determining the contractor's immunity from suit under § 1498.  Id.  This difference in finding, from that of the claims court reviewing the Government's liability, suggests that a different analysis may apply to suits against private contractors than to suits against the Government in the implied authorization and consent context.  See also Robishaw Eng'g, 891 F. Supp. at 1141 ("the contractor's immunity under § 1498 generally begins before § 1498 relief against the government becomes available in the Court of Federal Claims").

infringement through its contracting officer or through intervention in the infringement litigation.  Id.

Apart from the fact that the foregoing cases involve suits against the Government and not a private contractor, the rationale in these cases does not apply to circumstances where no Government contract has been awarded, and the alleged infringer is merely bidding on the contract.  Indeed, in such circumstances, courts have broadly construed the Government's implied authorization and consent.  The leading case addressing the applicability of § 1498 to private parties bidding on a Government contract is TVI Energy.  The issue before the TVI Energy court was, "whether a private party which infringes another's patent during Government bidding activities . . . is immune under 28 U.S.C. § 1498 from a District Court infringement action for [a] test demonstration."  TVI Energy, 806 F.2d at 1059.  The court answered in the affirmative, holding that the "only purpose in demonstrating the [infringing] targets was to comply with the Government's bidding requirements.   In these circumstances, [the court] can come to no other conclusion than that this demonstration fell within the scope of § 1498 as being 'for the United States' and 'with its approval.'"  Id. at 1060.  Significantly, the court further held that the Government had impliedly authorized the bidding contractor's alleged infringement despite the fact the contract did not necessitate infringement.  Id.  ("The mere fact that the Government specifications . . . did not absolutely require Blane to infringe TVI's patent . . . does not extinguish the Government's consent.").  The TVI Energy court rejected the plaintiff's argument that there could be no authorization or consent because the Government did not provide the bidding party with a formal "authorization and consent letter."  Id.  Instead, the court focused solely on the fact that

15

the Government required parties bidding on the contract to provide products for demonstration purposes in order to remain eligible for the contract.  Id.  This required demonstration, the <u>TVI Energy</u> court reasoned, carried with it the Government's implied authorization and consent to convey immunity under § 1498 to the bidding parties.  Id.

Courts consistently construe the Government's authorization and consent broadly in the bidding context for the purposes of determining whether a private party is immune from suit under § 1498.  For example, in <u>W.L. Gore</u>, a private party sought relief from a previous injunction so that it could bid to become a subcontractor on a proposed Government contract.  <u>W.L. Gore</u>, 842 F.2d at 1278.  The court found it unnecessary to modify the injunction because § 1498 unequivocally ensured the party "freedom to bid on and participate in the sale to the government of products which, or the process of making which, infringe [the other party's] patents."  <u>Id.</u> at 1281.  In <u>Trojan</u>, the Federal Circuit reaffirmed the broad nature of § 1498 in the bidding context, and held that "a patent owner may not use its patent to cut the government off from sources of supply, either at the bid stage or during performance of a government contract."  <u>Trojan, Inc. v. Shat-R-Shield, Inc.</u>, 885 F.2d 854, 856-57 (Fed. Cir. 1989).

Additionally, in <u>Raymond Engineering</u>, the Southern District of New York was presented with a question similar to the one in this case: whether a subcontractor bidding to supply products to a Government contractor could be shielded under § 1498.  <u>See</u> <u>Raymond Eng'g Inc. v. Miltope Corp.</u>, No. 85 Civ. 2685, 1986 U.S. Dist. LEXIS 25135, at *5-6 (S.D.N.Y. May 23, 1986).  The <u>Raymond Engineering</u> court noted that that "it is standard industry practice for sub-contractors to offer defense contractors prototypes for evaluation."  <u>Id.</u> at *8.  The court rejected the plaintiff's arguments that the subcontractor

should not be shielded from liability for its "pre-contractual activity . . . [b]efore receiving the purchase orders" from the Government contractor.  Id.  Rather, the court held that § 1498 shielded the subcontractor from liability during the bidding process because "[r]equiring a government contractor to receive a purchase order with the necessary authorization and consent clauses before even beginning the initial design and development work would impair the efficiency and quality of the current contracting system."  Id.

Further, the Astaris case is particularly relevant to the instant matter.  In Astaris, the Government had solicited parties to bid on a contract for aerial fire-retardant, and included in this solicitation the same authorization and consent clause that appears in the Solicitation here.  See Astaris, 2006 U.S. Dist. LEXIS 384, at *28.  The plaintiff argued that: (1) § 1498 did not extend to the defendant's alleged infringement in preparation for bidding; and (2) § 1498 did not apply to the defendant's alleged infringing finished product because the product did not fall within the scope of the solicitation's authorization and consent clause.  The Astaris court rejected the first of these arguments, and, relying on TVI Energy, W.L. Gore, and Trojan, held that "a potential government contractor . . . is properly protected under § 1498 from liability for patent infringement even during the time it develops and manufactures a small quantity of infringing product for testing when the product is later subject to bidding to supply the United States with the product."  Id. at *21.  Significantly, the Astaris court rejected the plaintiff's second argument as well, holding that in the bidding context, "where demonstration testing was required prior to the submission of bids for product sales," the Government gives its

implied consent despite the fact that "the solicitation did not include specifications that would require patent infringement." Id. at *29 (citing TVI Energy, 806 F.2d at 1060).

Having delineated the different contexts in which the Government gives its implied authorization and consent, I now turn to Plaintiffs' arguments. Plaintiffs advance a number of challenges to Defendant's § 1498(a) defense. For the reasons that follow, none of these challenges are sufficient to preclude the application of § 1498 to Defendant's alleged conduct.

To begin, Plaintiffs argue that the Government did not authorize Defendant's wheel because the wheel was not "directly related" to the technology requested by the Solicitation here. Plaintiffs' Br. In Opp. at 15-17.[14] In this sense, Plaintiffs seek to distinguish TVI Energy on the ground that the defendant in that case was alleged to have infringed on a patent that embodied the specific technology requested by the Government. Put differently, Plaintiffs argue that because neither a CTIS-compatible wheel, nor the technology of Plaintiffs' patented wheel, is the subject matter of the Solicitation, TVI Energy does not extend to shield Defendant from liability.[15] The Court does not read TVI Energy so narrowly. Indeed, the TVI Energy court stated that § 1498 should be broadly interpreted: "[t]he coverage of § 1498 should be broad so as not to limit the Government's freedom in procurement by considerations of private patent

---

[14] Specifically, Plaintiffs argue that the subject-matter of the Solicitation is the M-ATV, but not CTIS-compatible wheels. That is, the Solicitation specifications requested that the M-ATV include a CTIS, but not any particular CTIS-compatible wheel.

[15] Plaintiffs similarly argue that the Companies were not motivated by the Solicitation requirements when they elected to include Defendant's wheel in their prototype M-ATVs, and instead choose to do so purely out of "business considerations." Plaintiffs' Br. In Opp. at 4-6. However, this argument appears irrelevant to the applicability of § 1498, and Plaintiffs provide no law to convince the Court otherwise. Furthermore, as discussed infra in this opinion, the Companies' selection of Defendant's wheel pertains to, and is encompassed by, the Solicitation specifications.

infringement." <u>TVI Energy</u>, 806 F.2d at 1060.  Moreover, Plaintiffs provide no authority to support such a narrow reading.  For these reasons, and the underlying purpose of § 1498, the Court rejects Plaintiffs' argument.  <u>See</u> <u>Id.</u> ("To limit the scope of § 1498 only to instances where the Government requires by specification that a supplier infringe another's patent would defeat the Congressional intent to allow the Government to procure whatever it wished regardless of possible patent infringement.").

Plaintiffs additionally argue that because the Government has included an "authorization and consent clause" in the Solicitation, that clause provides the exclusive means for determining the scope of the Government's authorization.  Here, the Solicitation incorporates by reference Federal Acquisitions Regulation ("FAR") 52.227-1, which states that

> The Government authorizes and consents to all use and manufacture, in performing this contract or any subcontract at any tier, of any invention described in and covered by a United States patent—
> . . .
> (2) Used in machinery, tools, or methods whose use necessarily results from compliance by the Contractor or a subcontractor with (i) specifications or written provisions forming a part of this contract or (ii) specific written instructions given by the Contracting Officer directing the manner of performance.

48 C.F.R. 52.227-1.  Plaintiffs claim that this clause limits the Government's authorization and consent to infringement only when it "necessarily results from compliance" with the Solicitation's specifications.[16]  Because the specifications did not expressly require an infringing wheel, Plaintiffs argue that the Government did not

---

[16] Neither party has alleged that a Government contracting officer directed Defendant or the Companies in any manner that would necessitate infringement of the '383 patent, and thus Defendant does not rely on this clause in FAR 52.227-1 to show the Government's authorization or consent.

authorize or consent to Defendant's alleged infringement.[17]   Plaintiffs' argument is misplaced.  Because Defendant's wheels have only been used in the bidding context, the Court is not constrained by an explicit authorization and consent analysis based on the language of the authorization and consent clause.[18]   Instead, the Court engages in an implied authorization and consent analysis based on whether Defendant supplied its wheels in connection with, and contemplated by, the Solicitation specifications, and whether the Government required demonstration of the products in order to be eligible to bid for the contract.

This is not to say that the Government's choice to include an authorization and consent clause in the Solicitation is immaterial to the Court's implied authorization and consent analysis.  Rather, in the context of bidding, the Solicitation's authorization and consent clause serves as a reminder to those bidding on the contract that the Government is limiting its authorization and consent to the goods or services requested by the Solicitation.  See Astaris, 2006 U.S. Dist. LEXIS 384, at *26-27 ("The view most consistent with the 'broad' coverage provided by § 1498 is that the Solicitations . . . anticipate that the authorization and consent will extend to the very limited use of an infringing product in pre-contractual testing by the Government.").   That is, the

---

[17] As previously noted, supra at note 14 and accompanying text, Plaintiffs claim that the Solicitation specifications did not call for a particular CTIS-compatible wheel, and that there are other available CTIS-compatible wheels which do not infringe on the '383 patent.  See Young Decl. at ¶¶ 5-8.  Therefore, Plaintiffs argue, there can be no finding of necessary infringement.

[18] The Court acknowledges that where a Government contract contains an "authorization and consent clause," this clause serves as the Government's explicit authorization and consent in the performance of that contract.  That is, the Government is considered to explicitly authorize and consent to infringement if it falls within the scope of the clause.  See Sevenson 477 F.3d at 1366-67 ("Where, as here, a government contract contains an explicit authorization and consent clause . . . the scope of the government's authorization and consent to liability naturally hinges on the language of that clause.").

authorization and consent clause in the Solicitation signals to a bidder, like Defendant, that for the purposes of establishing the bidding party's immunity, the Government is providing its authorization and consent to bids that correspond to the specifications in the Solicitation.

Here, a CTIS is specified by the Solicitation, but no mention is made of what type of wheels to supply.  Obviously, to supply a functional CTIS requires CTIS-compatible wheels—although not necessarily wheels embodied by Plaintiffs' patent.[19]  Thus, although infringement is not specified, CTIS-compatible wheels are necessarily required. Therefore, Defendant's wheels were supplied in connection with, and are encompassed by, the subject matter of the Solicitation specifications, and are subject to implied authorization and consent consideration in connection with this bid.

Conversely, a bidder would likely not obtain immunity in the bidding process for products not the subject matter of, or reasonably contemplated by the terms of, the Solicitation or its specifications, even considering that TVI Energy holds that an infringing product does not have to be required and specified in order for the bidder to be shielded under § 1498.  For example, if the Solicitation specifications did not require or request that the M-ATVs include any type of horn device, then a bidding party that supplied an infringing version of such a product would likely not be shielded by the above implied authorization and consent analysis—even under a broad reading of authorization and consent in the bidding context.

---

[19] See Eaton Decl. at ¶¶ 6-7.  Plaintiffs similarly acknowledge this fact, and instead argue that the specification of a CTIS does not necessitate infringement of their patent.  Young Decl. at ¶ 5; Plaintiffs' Br. In Opp. at 5-6 ("while CTIS systems typically connect to a wheel, the presence of a CTIS system does not dictate the design of the wheel to which it connects").

Plaintiffs nonetheless cite to a number of cases to support their argument that Defendant does not have the authorization or consent of the Government to infringe upon the '383 patent.  Plaintiffs primarily rely upon Parker Beach, 58 Fed. Cl. 126, and Carrier, 534 F.2d 244.  Neither of these cases is applicable to the instant case because, as previously noted, both concern the Government's liability after a contract has been awarded.  Furthermore, the Government is the defendant in both of these cases, and thus these opinions address the Government's liability rather than a contractor's immunity.  That is, the Parker Beach and Carrier courts examined the Government's liability based on whether a Government contractor has exceeded the narrow scope of the Government's authorization and consent in the execution of a contract.  Simply put, these are cases in which (1) a Government contract has been awarded, and (2) the courts must determine whether the Government is liable for the contractor's actions.  In the instant infringement action there is no contract yet awarded, and this Court must only determine a bidding subcontractor's immunity, not the Government's liability.  Apart from this, Parker Beach and Carrier are distinguishable for the additional reasons that follow.

Plaintiffs claim that Parker Beach held that the Government could not be found to have authorized and consented to the use of the patented technology because it had no knowledge of the alleged infringement.[20]  Significantly, however, Parker Beach acknowledged and accepted TVI Energy, and noted that the TVI Energy court "did not decide that the Government had infringed based on [express] authorization and consent, but only held that the bidder for a government contract, who allegedly infringed

---

[20] As discussed infra in this opinion, the Government's knowledge of Defendant's alleged infringement is not relevant to the implied authorization and consent analysis for a private party's immunity in the bidding context under § 1498.

plaintiff's patent, was immune under § 1498 from an infringement action."  Id. at 133. Moreover, Parker Beach dealt with § 1498 in dicta, after deciding the main issue of a settlement agreement between the parties.  Parker Beach, 58 Fed. Cl. at 131 ("[i]t is unnecessary, for purposes of deciding this case, to reach the issue of patent infringement").

Carrier is similarly distinguishable from the instant matter because that case dealt solely with a Government services contract, not an equipment procurement contract like that underlying the Solicitation here.  Carrier, 534 F.2d at 249.  In the contract at issue in Carrier, "the Government was paying [the alleged infringer] for its services—i.e., the collection and removal of refuse."  Id.  The Carrier court found that because "neither the contract specifications nor any specific written instructions from the contracting officer required [the contracting party] to use a particular type of equipment, the Government ha[d] not authorized or consented to any infringement of plaintiff's patent in the performance of the . . . contract."  Id. at 247.  Thus, Carrier is factually distinguishable for two reasons: (1) the Solicitation here is for the award of an equipment contract, not a services contract; and (2) the specifications in the Solicitation request a particular type of equipment, the CTIS, and, although not a particular type of wheel, a CTIS-compatible wheel nonetheless is required.  Lastly, the Court notes that Carrier is a Claims Court decision issued a decade prior to the Federal Circuit's decision in TVI Energy. Therefore, to the extent Carrier's holding may contradict TVI Energy, and this Court does not believe it does, the reasoning of TVI Energy controls.

Beyond Parker Beach and Carrier, Plaintiffs rely on three other § 1498 cases: Sevenson, 477 F.3d 1361; Hughes, 29 Fed. Cl. 197; and Bereslavsky v. Esso Standard Oil

Co., 175 F.2d 148 (4th Cir. 1949).  Of these three cases, only <u>Sevenson</u> requires any significant treatment.[21]  Plaintiffs rely upon <u>Sevenson</u> for the proposition that when a Government contract includes an explicit "authorization and consent" clause, such as FAR 52.227-1, that clause prescribes the outer-limits of the Government's authorization and consent.  Plaintiffs' Br. In Opp. at 11.  However, as previously discussed, the <u>Sevenson</u> court engaged in an analysis of the Government's express authorization under a contract that had already been awarded.  <u>Id.</u> at 1367 ("the issue here is whether the government, through the TERC and PRAC [contracts], expressly authorized and consented to the use of the accused method").  The issue before this Court is not whether Defendant has the Government's express authorization under a contract already in existence, but whether Defendant has the Government's implied authorization to supply wheels to the Companies bidding on a contract.  <u>Sevenson</u> is thus inapposite to the instant matter.

Finally, in addition to the above arguments, Plaintiffs claim that the Government did not authorize Defendant's wheel because the Government was not aware that the bidding Companies would use the infringing wheel in response to its Solicitation.  This argument, however, conflates two separate issues: whether Defendant is immunized from

---

[21] Neither <u>Hughes</u> nor <u>Bereslavsky</u> arose in the bidding context, but rather involved contracts that had already been awarded.  Moreover, both opinions address implied authorization under § 1498 in circumstances where a contract did not contain explicit authorization to infringe, but nonetheless necessitated infringement in order to fulfill the terms of the contract.  <u>See Hughes</u>, 29 Fed. Cl. at 223 ("we conclude that the requisite authorization or consent was given no later than the time at which [the contractor] became contractually bound to manufacture a spacecraft containing an embodiment of the [allegedly infringed] patent"); <u>Bereslavsky</u>, 175 F.2d at 150 ("although the written contract did not provide in express terms for delivery of a product which would infringe the patent, it did require maximum production, which necessarily resulted in a product containing the infringing ingredients").  Because neither of these cases affects the Court's analysis under <u>TVI Energy</u>, there is no need to address them beyond this note.

liability, and whether Plaintiff can maintain a cause of action against the Government. The second issue is not relevant to a § 1498 analysis for a private party.  TVI Energy, 806 F.2d at 1060-61 ("[W]e do not find it necessary to answer here the question of whether [the patent holder] has a cause of action against the Government for patent infringement at this time.  We simply conclude that, if [the holder] now has a cause of action, its remedy is against the Government in the Claims Court.").  The analysis under § 1498(a) for an alleged private infringer's immunity from suit in the district court is separate from the analysis of the Government's liability for use of an infringing patent.  See Id.; Robishaw Eng'g, 891 F. Supp. at 1141; see also Astaris, 2006 U.S. Dist. LEXIS 384, at *18-21; Raymond Eng'g, 1986 U.S. Dist. LEXIS 25135, at *7-10.  The latter is undertaken only in the Federal Court of Claims.  See TVI Energy, 806 F.2d at 1060-61. Therefore, whether the Government was aware of Defendant's allegedly infringing wheel is not necessary to the analysis of whether Defendant's bid related activities are shielded under § 1498(a).[22]

For the foregoing reasons, the Court finds that the Government implicitly authorized and consented to Defendant's bid related activities.  Because Defendant's alleged infringement occurred in the context of bidding on a Government contract, a broad construction of the Government's implied authorization and consent is appropriate. Under this construction, a potential Government contractor or subcontractor is immune from a patent infringement suit if: (1) it provides a product that the Government requests in a solicitation to bid on a contract, even if the request does not necessitate infringement;

---

[22] Indeed, Plaintiffs acknowledge and concede in their papers that they likely do not have standing to object to an alleged infringer's failure to provide notice of its possible infringement to the Government.  Plaintiffs' Surreply In. Opp. at 3 (citing Virginia Panel Corp. v. MAC Panel Co., 139 F. Supp. 2d 753 (W.D. Va. 2001)).

and (2) the Government requires parties bidding on the contract to provide these products for demonstration or testing purposes.  Here, Defendant's activities were related and in response to the Solicitation specifications, and the Government required demonstration of the products in order to be eligible to bid for the contract.  The Solicitation requested that the Companies' M-ATVs include a CTIS and thus, by necessity, CTIS-compatible wheels, and required that the Companies provide fully functional prototype vehicles to the Government to remain eligible in the bidding process.[23]  Solicitation Specs. at 77; Solicitation at 3.  Further, it is immaterial as to whether the Solicitation requested or required a CTIS and its compatible wheels because <u>TVI Energy</u> holds that §1498(a) shields contractors and subcontractors bidding on Government contracts from patent infringement liability even if the solicitation to bid does not necessitate infringement.[24]

---

[23] Plaintiffs inform the Court that under the Solicitation specifications, the CTIS and its compatible wheels are "'tradable," meaning that "a contractor may propose M-ATV performance that does not meet these thresholds."  Plaintiffs' Br. In Opp. at 20.  Plaintiffs argue that because of this, the Government is not aware that the Companies included Defendant's allegedly infringing wheels in the prototype M-ATVs, and therefore cannot be found to have authorized or consented to these wheels.  <u>Id.</u> at 21.  Because the Court has found the Government's knowledge irrelevant to the analysis of Defendant's immunity under §1498, Plaintiffs' argument it without merit.  To the extent that Plaintiffs may also rely on the CTIS or its compatible wheels being "tradable" so as to argue that the Government did not authorize or consent to Defendant's wheels because the Solicitation did not require these wheels, this argument is similarly without merit.  <u>TVI Energy</u> makes clear that a party bidding in response to a Government solicitation will be immune from infringement liability, even if the solicitation does not necessitate infringement.  <u>TVI Energy</u>, 806 F.2d at 1060.  Moreover, Plaintiffs could not reasonably argue that § 1498 does not apply to any specifications the Government designates as "tradable."  This would limit the application of § 1498 only to required (or "non-tradable") specifications.  Bidding parties would be at the mercy of patent holders, as the potential contractor would not be able to provide bids that included any patented product without first obtaining a license to do so.  This goes against the fundamental purpose of § 1498, which is "to allow the Government to procure whatever it wished regardless of possible patent infringement."  <u>Id.</u>

[24] Plaintiffs argue that this case applies only to parties bidding to be prime contractors.  However, given the case law dealing with subcontractors under § 1498, and the plain

Because both parties concede that the manufacture and supply of Defendant's wheel was used solely for the purpose of the prime contractors bidding on the Solicitation, and Defendant has provided the Court with certified documentation linking Defendant's wheel to the M-ATVs and CTIS specification under the Solicitation, Defendant is entitled to immunity under § 1498.

The Court acknowledges Plaintiffs' concern that they will face large financial losses if they cannot recover on their claim against Defendant.  Plaintiffs' Br. In Opp. at 8-9.  Again, however, Plaintiffs' argument is misplaced, as the proper means for Plaintiffs to recover their potential losses is a claim against the Government.  Moreover, although Plaintiffs argue that they will face financial losses, they do not appear to argue that they currently have incurred any substantial losses due to Defendant's alleged conduct.  The TVI Energy court acknowledged similar concerns when it noted that the bidding contractors "'demonstration-infringement' was minimal at best.  The total value of the targets was only $500, and [the bidding contractor] received no commercial profit from the use of the targets; they were used solely for the purpose of display in the required Government procurement procedure."  TVI Energy, 806 F.2d at 1061.  Here, similar facts are present.  Although Defendant has alleged it has provided its wheels free of charge as well as sold them to the Companies, it has appeared to receive only minimal financial compensation for them.  Defendant's Motion To Dismiss at 4-5.  Moreover, there is nothing in the language of § 1498 or the case law that removes a bidding contractor's immunity if it receives compensation for participating in the bidding process.

---

language of the statute, Plaintiffs' interpretation is too narrow.  See W.L. Gore, 842 F.2d 1275 (extending TVI Energy's holding to parties bidding to become subcontractors on a government contract).

Additionally, the nature of § 1498(a) creates the possibility of a gap between the point when the alleged infringing party becomes immune from suit and when the Government becomes liable for the patent holder's potential losses.[25]  That is, "there will often be a period–beginning with the contractor's bid for or performance under the government contract, and lasting until delivery under the contract–during which a patentee will have no remedy for the government contractor's use of its patent."  Robishaw Eng'g, 891 F. Supp. at 1141.  For this reason, Defendant's alternative argument—concerning the Government's authorization and consent based on the acceptance and delivery of Defendant's wheels—is irrelevant to the implied authorization and consent analysis in the context of bidding.  Put differently, because "the contractor's immunity under § 1498 generally begins before § 1498 relief against the government becomes available in the Court of Federal Claims . . . the patentee generally must wait to sue the government under § 1498 until after the government accepts delivery of the disputed item."  Id.

Thus, whether Plaintiffs will be able to recover from the Government may likely turn on whether the Government accepted delivery.  However, this analysis is separate from whether the contractors and subcontractors who participate in the bidding process are immune from suit.  See Hughes, 29 Fed. Cl. at 224 n.32 (noting that "acceptance" has different meanings with regards to a contractor's immunity and the Government's

---

[25]  Indeed, "prospective contractors are immune from suit or injunction during the preparation period.  Should the government eventually award a contract and use the patented invention to become liable under § 1498(a), the patent holder is due just compensation as measured from only the time the government receives a finished product."  Richard McNeely, Comment, Governmental Indirect Patent Infringement: The Need to Hold Uncle Sam Accountable Under 28 U.S.C. § 1498, 36 Cap. U. L. Rev. 1065, 1084 (2008) (citing W.L. Gore, 824 F.2d at 1282-83).

liability).  Because the Court is deciding the sole issue of Defendant's immunity, it need not reach the issue of whether the Government has "accepted delivery" of the wheel for the purposes of determining if the Government has expressly or otherwise implicitly authorized and consented to Defendant's wheel under § 1498(a).  Indeed, the Court, following TVI Energy, declines to address the Government's liability for Defendant's conduct.

## Conclusion

For the foregoing reasons, the Court treats Defendant's motion as one for summary judgment.  Further, the Court finds that Defendant has proven it is entitled the protection of 28 U.S.C. § 1498(a) because it has shown that its allegedly infringing wheels were produced for the United States with its implied authorization and consent as part of the bidding process on a Government contract.  Defendant is thus immune from a patent infringement suit for these wheels.  Accordingly, the Court GRANTS Defendant's motion for summary judgment.

An appropriate Order shall follow.


Dated: March 30, 2010                              /s/Freda L. Wolfson
                                                   Freda L. Wolfson
                                                   United States District Judge